***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner DeLuca and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner DeLuca with modifications.
 *********** ISSUES
The issue for resolution is whether Plaintiff sustained a compensable injury by accident on March 1, 2007, and if so, to what benefits he is entitled.
 *********** *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at and following the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission;
2. At all relevant times, an employer-employee relationship existed between John K. Adams and Neuwirth Motors;
3. At all relevant times, Neuwirth Motors was self-insured through the North Carolina Automobile Dealer's Self-Insurer's Fund. At all times relevant to this claim, Brentwood Services Administrators, Inc., was and continues to be the servicing agent for the Self-Insurer's Fund;
4. The parties are subject to, and bound by, the North Carolina Workers' Compensation Act;
5. There are no issues as to misjoinder or nonjoinder of parties;
6. Defendants filed a Form 61 on or around March 14, 2007, denying Plaintiff's claim in its entirety;
7. The parties stipulated into evidence stipulated exhibit number 1, which consists of 170 pages, inclusive of the pretrial agreement, all NCIC forms, all medical records and bills, a medical billing summary and bills, and discovery responses of both parties;
8. Since the hearing, the parties have agreed and stipulated that Plaintiff's relevant average weekly wage is $485.71;
9. The following deposition was taken and received into the record before the Deputy Commissioner: *Page 3 
 a. Daniel Shapiro, P.A.
 *********** RULINGS ON EVIDENTIARY MATTERS
The objections at the hearing, and in the deposition, were ruled upon by the Full Commission in accordance with applicable law and the Rules of the North Carolina Industrial Commission.
 ***********
Based upon all of the competent credible evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, who was 55 years old at the time of hearing, had been employed with Defendant-Employer since August 7, 2003.
2. As of March 1, 2007, Plaintiff was employed with Defendant-Employer as a courtesy van driver. His job required him to transport customers, wash cars, test-drive repaired cars, pick up and deliver parts, pick up inspection stickers, and run other errands.
3. On March 1, 2007, Plaintiff reported to work, and worked a routine work day. Plaintiff usually worked from approximately 7:30 a.m. until approximately 4:30 p.m., with a one-hour lunch break.
4. Toward the end of his work day on March 1, 2007, Plaintiff's wife arrived at his work place. It was their routine for his wife to be dropped off at his work at the end of her work day, and for them to leave Defendant-Employer's premises together, to get a meal on their way home, and to return to their home. On this particular day, Greg Page, one of Plaintiff's *Page 4 
supervisors, called Plaintiff in and told him he needed him to do a test-drive before he went home, which was going to cause his work day to last longer than usual.
5. Defendant-Employer kept a snack machine in the workplace for the benefit of its customers and employees. It was located near Greg Page's office and the cashier's cage. Employees frequently used this machine throughout the day for their convenience.
6. Plaintiff's wife told Plaintiff that she was hungry, and Plaintiff was hungry as well. Although conflicting evidence was offered, the Full Commission finds that Plaintiff went to the snack machine to purchase a bag of chips for himself and for his wife.
7. After Plaintiff placed his money in the snack machine, the bag of chips got stuck in the machine.
8. Michael J. Keffer, a manager with Defendant-Employer, testified that the normal procedure when the snack machine malfunctioned was to get a refund from the cashier. Because of the small amounts of money involved, it was not be necessary for an employee or customer to prove that the snack machine had malfunctioned in order to get a refund. Plaintiff confirmed that, on past occasions, when Plaintiff had had products get stuck before in the snack machine, he been able to get his money back from the cashier.
9. On this occasion, when Plaintiff sought to get the money for the bag of chips back from the cashier, he found the cashier's cage unstaffed and empty. Because Plaintiff was in a hurry to test-drive the vehicle as directed by Mr. Page, Plaintiff rocked the snack machine in an effort to release the bag of chips. While he was rocking the machine, Plaintiff felt a pop and a burning sensation in the back of his left lower leg.
10. Plaintiff testified, and the Full Commission finds as fact, that because Plaintiff had been able to get his money back from the cashier in the past, he had never had to rock the *Page 5 
snack machine before. Plaintiff presented no evidence concerning how common it was for the cashier's cage to be unstaffed, or how long it would typically take for the cashier to return.
11. Plaintiff reported his injury, and its cause, immediately to Greg Page.
12. Plaintiff was injured on a Thursday, and worked Friday, but did not work Saturday or Sunday. He returned to work on Monday, March 5, 2007.
13. Over the weekend, Plaintiff's left ankle and toes turned black and felt like "a hot poker." He believed his injury was temporary and did not seek care over the weekend.
14. When he returned to work on Monday, March 5, 2007, he again reported his injury to a superior, but this time to Christy Pataky, the office manager, and he showed her his injury. She instructed him to go to Medac Corporate Health on Oleander Drive, which he did on March 7, 2007. There he saw Shannon McElroy, P.A. She observed swelling, tenderness, and bruising in the left posterior knee area, extending down the calf into the ankle and toes.
15. Ms. McElroy referred Plaintiff to Wilmington Surgical Associates for a Doppler test to rule out a blood clot, and the Doppler test was negative.
16. Plaintiff returned to Medac Corporate Health on March 8, 2007, and saw Daniel Shapiro, P.A. Mr. Shapiro diagnosed a gastrocnemius muscle tear of Plaintiff's left lower leg. Mr. Shapiro identified this as an acute condition, and attributed this to Plaintiff's injury on March 1, 2007.
17. This visit with Mr. Shapiro was the final authorized medical care by Defendants, and Plaintiff has not received any additional medical care since that date, primarily due to expense.
18. Plaintiff's leg continues to hurt with use; it burns with use; the left calf has deteriorated in size fifty percent (50%) as compared to the right; he has trouble putting any *Page 6 
weight on the left leg; he has minimal stamina in the left leg; the left calf often cramps; and he has difficulty traversing stairs due to the condition of the left leg; he limps and favors the left leg.
19. Plaintiff resigned from Defendant-Employer on or about January 19, 2008, and took new employment with Cape Fear Memorial Hospital, making slightly more per hour.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. To be compensable under the North Carolina Workers' Compensation Act, a workplace injury must be an "injury byaccident arising out of and in the course of the employment." N.C. Gen. Stat. § 96-2(6) (emphasis added). Our courts have defined "accident" under the Workers' Compensation Act as follows:
 An "accident" is an unlooked for and untoward event not expected or designed by the employee. An "accident" is not established by the mere fact of injury but is to be considered as a separate event preceding and causing the injury. No matter how great the injury, if it is caused by an event that involves both an employee's normal work routine and normal working conditions it will not be considered to have been caused by accident.
Renfro v. Richardson Sports Ltd.,172 N.C.App. 176, 180, 616 S.E.2d 317, 322 (2005), disc. reviewdenied, 360 N.C. 535, 633 S.E.2d 821 (2006) (quotingSearsey v. Perry M. Alexander Construction Co.,35 N.C.App. 78, 79-80, 239 S.E.2d 847, 849, disc. reviewdenied, 294 N.C. 736, 244 S.E.2d 154 (1978))
2. In the present matter, the actual injury to Plaintiff's leg was not, in and of itself, an "accident," because an "accident" must be "a separate event preceding and causing the injury." SeeRenfro. *Page 7 
3. Plaintiff's rocking of the snack machine, while it may have been "a separate event preceding and causing the injury," was not an "accident" because it was not "an unlooked for and untoward event not expected or designed by the employee." Instead, Plaintiff's rocking of the snack machine was an intentional act designed and carried out by Plaintiff in an effort to recover the stuck bag of chips. See Id.
4. The bag of chips getting stuck in the snack machine was not an "accident" because, by Plaintiff's admission, Plaintiff had had food get stuck in the snack machine before, and Plaintiff's workplace had an established procedure for dealing with such a situation. The bag of chips getting stuck in the snack machine on this occasion was therefore not "an unlooked for and untoward event not expected" by Plaintiff, but was instead "an event that involve[d] both [Plaintiff's] normal work routine and normal working conditions."See Id.
5. Plaintiff has failed to present evidence sufficient to show that the absence of the cashier from the cashier cage immediately preceding the injury constituted an "accident," insofar as there is insufficient evidence for the Full Commission to find that the cashier's absence was "an unlooked for and untoward event not expected" by Plaintiff, as opposed to being a part of Plaintiff's "normal work routine and normal working conditions." See Id.
The Full Commission concludes that, even if Plaintiff's injury occurred because it was the first time Plaintiff was faced withboth a snack stuck in the snack machine and the absence of the cashier from the cashier cage, if both events independently were part of Plaintiff's "normal work routine and normal working conditions," the mere fact of their occurring together does not render them an "accident." *Page 8 
6. Because Plaintiff has failed to show that he suffered an "injury by accident arising out of and in the course of [his] employment," Plaintiff's claim for benefits pursuant to the Worker's Compensation Act must fail. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for compensation for his leg condition, including all medical treatment and indemnity, pursuant to the North Carolina Workers' Compensation Act must be, and the same is hereby, DENIED.
2. Each side shall pay its own costs.
This the 10th day of August, 2009.
S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1